UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON LATRELL THOMAS, | No. 2: 14-cv-0066 JAM KJN P |
| Plaintiff, | |
| v. | ORDER |
| GUFFEY, et al., | |
| Defendants. | |

Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action pursuant to 42 U.S.C. § 1983.  Pending before the court is plaintiff's motion to compel.  (ECF No. 32.)

Plaintiff's Claims

Plaintiff has filed a motion for leave to file a second amended complaint and proposed second amended complaint.  (ECF No. 56.)  By separate order, the undersigned has granted plaintiff's motion for leave to file the second amended complaint.  Accordingly, the allegations against defendants Ruiz, Guffey and Link-Lopez in the second amended complaint are summarized herein.

Plaintiff alleges that on March 4, 2013, defendants assaulted him in apparent retaliation for plaintiff's earlier statements which were disrespectful of defendant Guffey's wife and family. (Id. at 11-12.)  Plaintiff alleges that defendants came to his cell armed with pepper spray.  (Id. at 11.)  Plaintiff alleges that after his cell door was opened, defendant Ruiz grabbed his right arm

1

1  and rammed plaintiff's head into the edge of the door. (Id.) In self-defense, plaintiff punched
2  defendant Ruiz which caused defendant Ruiz's nose to bleed. (Id.) At this point, plaintiff's cell
3  door was closed. (Id.) Moments later, defendant Guffey returned to the tier and tried to clean up
4  defendant Ruiz's blood, but missed a spot. (Id.) On March 5, 2013, Sergeant Ortiz took photos
5  of defendant Ruiz's blood on tier. (Id.) Plaintiff alleges that when defendants attacked him,
6  defendant Ruiz mentioned that the attack was because of the disrespectful statements plaintiff
7  made regarding defendant Guffey's family. (Id. at 12.)
8      Plaintiff alleges that defendants' deliberate indifference to his safety caused him to suffer
9  physical injury and emotional distress. (Id. at 17.)
10 Motion to Compel
11     Plaintiff moves to compel defendants to produce documents requested in a request for
12 production of documents. (ECF No. 32 at 2.) In particular, plaintiff requests that defendants be
13 ordered to produce "all final investigation reports and findings conducted by the Office of
14 Internal Affairs" concerning his claims. (Id. at 2.) Plaintiff alleges that on February 27, 2014,
15 and March 11, 2014, California State Prison ("CSP") Warden Macomber mailed the Internal
16 Affairs findings to defendants' attorney. (Id. at 2.) Attached to plaintiff's motion to compel is a
17 privilege log prepared by defendants' counsel stating that defense counsel has a copy of the
18 Notice of Internal Affairs Investigation Findings. (Id. at 12.)
19     In their opposition, defendants state that they do not have possession, custody or control
20 of the Internal Affairs reports or investigatory documents plaintiff requests. (ECF No. 39 at 2.)
21 Defendants state that these documents are in the possession of the California Department of
22 Corrections and Rehabilitation, a third party. (Id.)
23     With respect to the Internal Affairs findings, referred to in the privilege log, defendants
24 invoke the information privilege. (Id.) Defendants argue, in general terms, that the information
25 sought involves defendants' personnel records. (Id. at 3.) They also assert the privacy rights of
26 third parties and argue that disclosure could compromise the safety and security of the institution.
27 (Id.) Defendants argue that these documents are privileged and should not be disclosed absent an
28 in camera review by the court. (Id.)

*Standards Governing Privilege*

Privileges are to be "strictly construed" because they "impede full and free discovery of the truth." Eureka Financial Corp. v. Hartford Acc. and Indemnity Co., 136 F.R.D. 179, 183 (E.D. Cal. 1991). The Supreme Court has long noted that privileges are disfavored. Jaffee v. Redmond, 518 U.S. 1, 9 (1996). "The party asserting an evidentiary privilege has the burden to demonstrate that the privilege applies to the information in question." Tornay v. United States, 840 F.2d 1424, 1426 (9th Cir. 1988).

In civil rights cases brought under federal statutes, questions of privilege are resolved by federal law. Kerr v. U.S. District Court for the Northern District of California, 511 F.2d 192, 197 (9th Cir. 1975), aff'd on procedural grounds, 426 U.S. 394 (1976). Where the complaint alleges both substantive federal and state law claims concerning the same alleged conduct, the federal law of privilege controls. Agster v. Maricopa County, 422 F.3d 836, 839-40 (9th Cir. 2005) (internal citations omitted). "Federal common law recognizes a qualified privilege for official information." Sanchez v. City of Santa Ana, 936 F.2d 1027, 1033 (9th Cir. 1990) ("[g]overnment personnel files are considered official information."). "To determine whether the information sought is privileged, courts must weigh the potential benefits of the disclosure against the potential disadvantages. If the latter is greater, the privilege bars discovery." Sanchez, 936 F.2d at 1033–34; see also Martinez v. City of Stockton, 132 F.R.D. 677 (E.D. Cal. 1990).[1] "The balancing approach of the Ninth Circuit is mirrored in this and other courts' previous determinations that a balancing test is appropriate when the disclosure of law enforcement files in

---

[1] The ten factors include: "(1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any intradepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; and (10) the importance of the information sought to the plaintiff's case." Crawford v. Dominic, 469 F.Supp. 260, 263 (D.C. Pa. 1979) (citing Frankenhauser v. Rizzo, 59 F.R.D. 339, 344 (E.D. Pa. 1973)).

1 a civil action is at issue." Doubleday v. Ruh, 149 F.R.D. 601, 609 (E.D. Cal. 1993).

2 Documents that are a part of the personnel records of officers defending civil rights

3 actions, while containing sensitive information, are within the scope of discovery. Soto v. City of

4 Concord, 162 F.R.D. 603, 614–15 (N.D. Cal. 1995); Hampton v. City of San Diego, 147 F.R.D.

5 227, 230-31 (S.D. Cal. 1993); Miller v. Pancucci, 141 F.R.D. 292, 296 (C.D. Cal. 1992). "State

6 privilege doctrine, whether derived from statutes or court decisions, is not binding on federal

7 courts in these kinds of cases." Kelly v. City of San Jose, 114 F.R.D. 653, 655 (N.D. Cal. 1987).

8 As to invoking the official information privilege, in order to do so, "[t]he claiming official

9 must 'have seen and considered the contents of the documents and himself have formed the view

10 that on grounds of public interest they ought not to be produced' and state with specificity the

11 rationale of the claimed privilege." Kerr, 511 F.2d at 198. The party invoking the privilege must

12 at the outset make a "substantial threshold showing" by way of a declaration of affidavit from a

13 responsible official with personal knowledge of the matters to be attested to in the affidavit. Soto

14 v. City of Concord, 162 F.R.D. 603, 613 (N.D. Cal. 1995).

> The affidavit must include: (1) an affirmation that the agency generated or collected the material in issue and has maintained its confidentiality; (2) a statement that the official has personally reviewed the material in question; (3) a specific identification of the governmental or privacy interests that would be threatened by disclosure of the material to plaintiff and/or his lawyer; (4) a description of how disclosure subject to a carefully crafted protective order would create a substantial risk of harm to significant governmental or privacy interests, and (5) a projection of how much harm would be done to the threatened interests if disclosure were made.

21 Id.

22 In addition, "[t]he asserting party, as in any case where a privilege is claimed, must

23 sufficiently identify the documents so as to afford the requesting party an opportunity to

24 challenge the assertion of privilege." Miller, 141 F.R.D. at 300.

25 *Discussion*

26 In the instant case, defendants did not properly invoke the official information privilege.

27 The official information privilege must be formally claimed by "the head of the department which

28 has control over the matter, after actual personal consideration by that officer." United States v.

4

1  Reynolds, 345 U.S. 1, 7–8, (1953).[2] Defendants did not file a declaration by a person with

2  control over the Internal Affairs findings in support of their invocation of the official information

3  privilege.  The privilege log alone, attached to plaintiff's motion, is insufficient to invoke the

4  privilege.  See Bernat v. City of California City, 2010 WL 4008361 at *2 (E.D. Cal. 2010).

5  Accordingly, defendants are granted ten days to file a proper declaration.  Following receipt of

6  this declaration, the undersigned will issue further orders.

7      With respect to defendants' claim that they do not have possession, custody or control of

8  the Internal Affairs reports and investigatory documents, responding parties are required to

9  produce documents which are in their "possession, custody or control."  Fed. R. Civ. P. 34(a)(1).

10 "A party need not have actual possession of documents to be deemed in control of them, [and] a

11 party that has a legal right to obtain certain documents is deemed to have control over the

12 documents."  Clark v. Vega Wholesale, Inc., 181 F.R.D. 470, 472 (D. Nev. 1998).

13     The undersigned accepts that correctional officers, such as defendants, do not have access

14 to the Internal Affairs reports and investigatory documents.  Accordingly, plaintiff's motion to

15 compel these documents is denied.  However, as will be discussed in a separate order, plaintiff

16 will be granted an opportunity to subpoena these documents from the non-party who allegedly

17 possesses them.

18     Accordingly, IT IS HEREBY ORDERED that plaintiff's motion to compel (ECF No. 32)

19 is denied as to plaintiff's request for Internal Affairs reports and investigatory documents; within

20 ten days of the date of this order, defendants shall file a declaration in support of their invocation

21 ////

22 ////

---

[2] The claim should be made by a person in an executive policy position.  See Reynolds, 345 U.S. at 8 n.20 ("The essential matter is that the decision to object should be taken by the minister who is the political head of the department, and that he or she should have seen and considered the contents of the documents and himself have formed the view that on grounds of public interest they ought not to be produced ...") "[T]he information for which the privilege is claimed must be specified, with an explanation why it properly falls within the scope of the privilege."  In re Sealed Case, 856 F.2d 268, 271 (D.C. Cir. 1988).  An official cannot invoke a privilege without personally considering the material for which the privilege is sought.  Yang v. Reno, 157 F.R.D. 625, 634 (M.D. Pa. 1994).

1 of the official information privilege with respect to plaintiff's request for the Internal Affairs
2 findings.
3 Dated: March 13, 2015

_Kendall J. Newman_
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

Thom66.com